[No. A048932. First Dist., Div. One. May 13, 1991.]

ALEXANDER D., Plaintiff and Appellant, v.
STATE BOARD OF DENTAL EXAMINERS, Defendant and Respondent.

COUNSEL

Charles R. Garry for Plaintiff and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, and Isa R. Rodriguez, Deputy Attorney General, for Defendant and Respondent.

OPINION

**NEWSOM, Acting P. J.**—This case concerns the constitutionality of Business and Professions Code section 820,[1] dealing with possible mental incompetency of a licensed dentist.

## STATEMENT OF FACTS AND PROCEDURE

Appellant Alexander D., a practicing dentist licensed by the State of California, appeals from an order of the superior court denying his motion for preliminary injunction to enjoin the Board of Dental Examiners (respondent or Board) from ordering him to submit to a psychiatric examination.

On November 28, 1989, appellant was served with an order and petition issued by the Board compelling him to undergo a psychiatric examination on January 16, 1990. The petition alleged a factual basis for the ordered examination based on appellant's bizarre statements and conduct.[2]

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

[2] The petition charged appellant with grossly inappropriate care of patients: 1) appellant told one patient (C.A.S.) a root canal was required, refused to provide X-rays for a second opinion, insulted the patient and finally produced unreadable X-rays; 2) appellant acted bizarrely and took pictures of another patient (Mr. A.) while insisting (falsely) he knew the patient had been in jail but offering to work out a deal with the jailer in exchange for information, and then refused to provide a receipt for cash payment.

The petition also detailed allegations made by appellant in his numerous federal pleadings filed in propria persona against various people and public entities, including the Board. Appellant claimed improper surveillance and investigation of him, including: (1) the placement of a receptionist in his office by the Board following an order by Ronald Reagan in 1982; (2) this placement was timed to coincide with the passage of a "rush amendment" of the California Dental Practice Act passed in the interest of Blue Cross, the California Dental Service and the California Dental Association; (3) investigators conspired to divert incoming calls away from his office in order to get him to take business he would normally refuse in an attempt to witness him engaged in some staged wrongdoing; (4) investigators interfered with the rental and sale of his condominium; (5) the same investigators assaulted and battered him after a hit-and-run automobile accident; (6) in connection with the filing of his federal law suit, five unknown, unnamed agents of the United States Attorney General's office had shifted

An attached report from a reviewing psychiatrist opined that it was "highly probable that [appellant was] suffering from emotional/mental psychiatric, psychological problems."[3]

At the request of appellant's counsel, the examination was rescheduled for January 23, 1990.

On January 9, 1990, appellant filed a complaint for injunctive relief, request for temporary injunction and application for temporary restraining order against the psychiatric examination. A temporary restraining order was issued. On January 23, 1990, an order to show cause was heard; the request for preliminary injunction was denied by order on February 5, 1990.

On February 26, 1990, appellant was served with a letter and order for the psychiatric examination.

On March 7, 1990, appellant filed a notice of appeal; his petition for stay was denied by this court on March 14, 1990.

### DISCUSSION

The Board of Dental Examiners of California, a part of the Department of Consumer Affairs, is charged with enforcing the Dental Practice Act. (§§ 1600, 1601.) Consistent with this power, the Board may conduct investigations (Cal. Code Regs., tit. 16, § 1001) and may discipline dentists licensed to practice in California. (§§ 1670-1681.) The Board may also order a licentiate to undergo a psychiatric examination when it appears that his or her ability to practice the profession safely is impaired due to mental illness. (§ 820.)

Section 820 applies to all healing arts practitioners licensed or certificated by the state and provides: "Whenever it appears that any person holding a license, certificate or permit under this division or under any initiative act referred to in this division may be unable to practice his or her profession safely because the licentiate's ability to practice is impaired due to mental illness, or physical illness affecting competency, the licensing agency may order the licentiate to be examined by one or more physicians and surgeons or psychologists designated by the agency. The report of the examiners shall

---

places in line in front of him, with two intentionally stepping out of line to insure he was assigned a particular judge.

[3]The reviewing psychiatrist suggested that these problems could be the result of serious and significant personality disorder, serious and significant psychotic illness, major mental disorder of affective type, substance abuse, organic brain disease or a combination of the above.

be made available to the licentiate and may be received as direct evidence in proceedings conducted pursuant to Section 822."

Appellant contends that his due process rights were violated by the Board's order compelling him to undergo a psychiatric examination. He maintains that section 820 is unconstitutional because no standards of reasonable cause or guidelines are present within the statute. His only asserted authority is the case of *Miller* v. *Board of Medical Quality Assurance* (1987) 193 Cal.App.3d 1371 [238 Cal.Rptr. 915], but he admits that *Miller* was actually decided on the ground of the physician's untimely filing of a review petition. Dr. Miller's license had been revoked when he refused to submit to a psychiatric examination under the authority of section 2296 (now § 820). He filed a petition for writ of administrative mandamus to review a reinstatement order of the Board of Medical Quality Assurance on the ground that the original revocation order was void and the conditions imposed on reinstatement were thus improper. The trial court granted the petition, concluding that section 2296 was unconstitutional. However, the Court of Appeal reversed, finding that the doctor's petition was untimely, since it was not filed within 30 days of the last day on which reconsideration of the revocation order could be ordered, as required by Government Code section 11523. The court also held that he could not escape the bar of the statute of limitations even if section 2296 was unconstitutional, an issue which it specifically refused to reach. (*Id.* at p. 1379.) Thus, appellant has essentially no legal support for his contention.

The People respond that section 820 is not unconstitutional and appellant's due process rights were not violated because the order prescribed in the statute is investigatory, not adjudicatory. The People place primary reliance on a comparable, but not identical, case from Division Four of this district: *Smith* v. *Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316 [248 Cal.Rptr. 704]. *Smith* concerned a similar statute (§ 2292) which allows the Board of Medical Quality Assurance to order a professional competency examination if it has reasonable cause to believe the physician is unable to practice with reasonable skill and safety to patients. The court held that the lack of a hearing at this investigatory stage did not deprive the physician of his due process rights under the federal or state Constitutions.

The People maintain and we agree that both the language of the statute itself and surrounding code sections as well as the legislative history demonstrate the investigatory purpose of the examination. Section 820 authorizes the report of the examiners to be used as direct evidence in proceedings conducted pursuant to section 822, a statutory provision authorizing the Board to revoke or suspend the license or to impose probation if it deter-

mines the "licentiate's ability to practice his or her profession safely is impaired." These acts by the Board result from a formal determination requiring a specified adjudicatory process mandated by sections 826 and 1670 which require that the proceedings be conducted in accordance with the Administrative Procedure Act mandating full due process considerations. (Gov. Code, § 11500 et seq.) In addition, section 828 provides that if the licensing agency determines, after proceeding under section 820, that there is insufficient evidence to bring a formal adjudicatory action pursuant to section 822, then all agency records, including investigative and psychological reports, shall be kept confidential (and eventually destroyed) and are not subject to discovery or subpoena. In other words, the psychiatric examination is an investigatory tool, the results of which may be used by the Board to determine if formal adjudicatory proceedings will be brought. But the licentiate faces no potential discipline until formal adjudicatory proceedings are commenced.

■ In ascertaining legislative intent so as to effectuate the purpose of a law, statutes must be construed with reference to the object sought to be accomplished. (*People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322]; *In re Andrews* (1976) 18 Cal.3d 208, 212 [133 Cal.Rptr. 365, 555 P.2d 97].) Extrinsic aids, including legislative debates and committee reports may be consulted. (See *Curtis* v. *County of Los Angeles* (1985) 172 Cal.App.3d 1243, 1250 [218 Cal.Rptr. 772].) Relevant committee reports declare that section 820 was enacted to close a loophole in the Lanterman-Petris-Short Act so that mentally and physically incompetent health professionals who need not be involuntarily committed may be prohibited from continuing to practice. (See Sen. Democratic Caucus Rep. on Assem. Bill No. 3522, as taken from Assem. Health Com., Aug. 19, 1982; letter from legislation sponsor (Attorney General) to Governor, Aug. 30, 1982.)

The *Smith* court carefully analyzed federal and state due process concerns in enforcing the code requirements. Their analysis is applicable here. Federal constitutional analysis requires that appellant first establish that due process applies by showing a protected liberty or property interest. However, appellant's license to practice dentistry (property interest) is not immediately at stake in this investigatory proceeding nor may discipline be imposed at this stage. Similarly, the independent determination that a psychiatric examination is warranted protects appellant's liberty interest. (*Smith, supra,* 202 Cal.App.3d at pp. 326-327.)

■ The extent to which state procedural due process is available depends on a careful weighing of the private and governmental interests involved. Four factors must be considered: (1) the private interest affected;

(2) the risk of erroneous deprivation of such interest through the procedure used, and the value of substitute procedures; (3) the dignitary interest in informing the individual of the nature, grounds and consequences of the action and enabling him or her to answer to a responsible governmental official; and (4) the governmental interest, including the function involved and additional fiscal or administrative burdens. (*Smith* v. *Board of Medical Quality Assurance, supra*, 202 Cal.App.3d at p. 327.)

██ Here, appellant's property interest or license is not at stake, his liberty is only minimally affected, and his privacy is protected by a confidential investigation. The risk of erroneous deprivation is remote because any discipline or revocation would be the result of a separate adjudicatory hearing accompanied by the full panoply of due process protections. Appellant was served with the order and petition setting forth the background facts and the written psychiatric evaluation; the later adjudicatory hearing provides full opportunity for rebuttal. Finally, the government's interest in protecting the public from unsafe or incompetent practitioners would be severely impacted by the necessity for every preliminary investigation to be conducted with full due process protections. (*Smith* v. *Board of Medical Quality Assurance, supra*, 202 Cal.App.3d at pp. 327-328.)

Appellant complains that *Smith* is not analogous because the statute at issue there (§ 2292) includes a reasonable cause provision with explicit definitions. He also insists that a psychiatric examination is potentially more damaging to one's professional reputation than an objective competency examination. But certainly any doctor or dentist compelled to undergo a professional competency examination experiences a comparable stigma to his or her reputation as a doctor or dentist ordered to undergo a psychological examination. The results of the examination are not made public unless further proceedings are taken. (§ 828.) Moreover, by initially ascertaining the licentiate's mental state, groundless charges for license revocation might be prevented. The Board of Dental Examiners (as other health professional licensing boards) has as its primary mission the protection of consumers. Section 820 is a rational investigatory scheme to carry out that mission.

Appellant is correct that the statute at issue in *Smith* contains more definitive reasonable cause provisions. The only guideline set forth in section 820 is simply "[w]henever it appears that . . . the licentiate's ability to practice is impaired due to mental illness . . . ." However, in appellant's case, the facts set forth in the petition arguably establish reasonable cause.

In the petition, the Board recounted two patient complaints showing grossly inappropriate care. ██ ██ ██ Similar bizarre conduct is sug-

gested by the allegations in appellant's federal litigation.[4] This and other information acquired by the Board was reviewed by an independent psychiatrist who recommended a full psychiatric evaluation.[5] The Board's statutory mandate is to regulate the dental profession and to protect the citizens of the state. (§§ 101, 101.6.) By requiring a psychiatric examination to help determine whether a licentiate's mental state is interfering with his or her competency to practice dentistry, the Board advances its investigatory function without compromising the licentiate's right to due process.

The judgment is affirmed.

Stein, J., and Dossee, J., concurred.

---

[4]Although appellant argues that his federal pleadings should not be available for use against him, the People accurately note that the pleadings are used only to illustrate appellant's abnormal state of mind and, as such, no evidentiary privileges have been violated. (See *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157 [232 Cal.Rptr. 567, 728 P.2d 1202], discussing privilege embodied in Civ. Code, § 47, subd. (b)(2) as applicable to tort liability.)

[5]Other information included the accusation by another dentist that appellant's work was substandard and exhibited an extreme departure from professional standards. There was also reference to prior investigations of appellant's performance.