[No. A132197. First Dist., Div. Two. Sept. 26, 2012.]

OPHELIA LEE, Plaintiff and Appellant, v.
BOARD OF REGISTERED NURSING, Defendant and Respondent.

COUNSEL

Ophelia Lee, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alfred Terrazas, Assistant Attorney General, Frank H. Pacoe and Nicholas Tsukamaki, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**RICHMAN, J.**—Sections 820 and 821 of the Business and Professions Code[1] authorize revoking of the license of a health care professional for failure to comply with an order requiring a mental fitness examination. Here, following a hearing before an administrative law judge, the Board of Registered Nursing (Board) revoked the registered nurse license of Ophelia Lee after she refused to submit to such an examination. The trial court denied Lee's petition for a writ of administrative mandate seeking to overturn the revocation. Lee appeals that denial. We affirm.

## BACKGROUND

Lee has been a registered nurse since 2000. In 2007, her employer, Eden Medical Center, began to have doubts about Lee's mental condition to continue working in the surgical unit. During that year, Lee was examined by five mental health professionals. Two, Drs. Zhalkovsky and Kirz, diagnosed her as suffering from delusions that would impair her ability to function as a nurse. Three others, Drs. Webber, Ho, and Spivey, found no such impairment.

On April 22, 2009, the Board ordered Lee to submit to an examination by a psychologist or psychiatrist selected by the Board no later than May 22. Because Lee did not meet that deadline, the Board in June 2009 filed an "accusation," the initial document looking to revoke Lee's license. But the Board let Lee know that the accusation would be withdrawn if she was examined by Dr. Bertagnolli no later than August 14. Lee tried to have the examination conducted by a psychiatrist of her choosing, but the Board insisted on Dr. Bertagnolli. Lee missed the Board's deadline for examination by Dr. Bertagnolli. Lee did schedule an appointment with Dr. Bertagnolli for August 28, but on August 19 her counsel advised the Board that she would not submit to an examination by Dr. Bertagnolli.

Nevertheless, the Board spent the next three months trying to find a replacement for Dr. Bertagnolli who would be acceptable to Lee. In November 2009, the Board arranged for a replacement examiner, but Lee told the Board she "will not accept any psychiatric or psychological exams whatever." The Board then proceeded with the accusation. After an evidentiary hearing, an administrative law judge concluded that Lee's license should be revoked,

---

[1] Statutory references are to the Business and Professions Code unless otherwise indicated.

and the Board agreed.[2] The trial court denied Lee's petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5.

## DISCUSSION

Ordinarily, "[w]hen a trial court rules on a petition for writ of mandate following a license revocation, it must exercise its independent judgment to determine whether the weight of the evidence supported the administrative decision. [Citations.] After the trial court has exercised its independent judgment upon the weight of the evidence, an appellate court's function 'is solely to decide whether credible, competent evidence supports [the trial] court's judgment.' " (*Finnerty v. Board of Registered Nursing* (2008) 168 Cal.App.4th 219, 227 [85 Cal.Rptr.3d 364], quoting *Yakov v. Board of Medical Examiners* (1968) 68 Cal.2d 67, 69 [64 Cal.Rptr. 785, 435 P.2d 553]; accord, *Sulla v. Board of Registered Nursing* (2012) 205 Cal.App.4th 1195, 1200 [140 Cal.Rptr.3d 514].) But this is not an ordinary case.

■ The Board is responsible for administering the Nursing Practice Act (§ 2700 et seq.), the statutory scheme governing the licensing of registered nurses such as Lee.[3] (§ 2732; Cal. Code Regs., tit. 17, § 50501, subd. (a)(15).) Concomitantly, the Board is also responsible for disciplining the registered nurses it has licensed, up to and including revocation of that license. (§§ 2701, 2750, 2759.) Discipline may be imposed on a number of grounds, the most prominent of which are specified types of "[u]nprofessional conduct" and "[c]onviction of a felony or of any offense substantially related to the qualifications, functions, and duties of a registered nurse." (§ 2761, subds. (a), (f).) These are the grounds ordinarily presented. But not here.

Sections 820 to 822—which are not limited to nurses but apply to all licensed health care professionals—establish another significant basis for discipline. These statutes respectively provide in pertinent part: "Whenever it appears that any person holding a license, certificate or permit under this division . . . may be unable to practice his or her profession safely because the licentiate's ability to practice is impaired due to mental illness, or physical illness affecting competency, the licensing agency may order the

---

[2] Lee represented herself at the hearing, and she continues to do so on this appeal. However, she was represented by counsel in the trial court.

[3] During the pendency of this appeal, Lee commenced an original proceeding (*Lee v. Superior Court* (Sept. 26, 2012, A136040 [petn. den.])) with a petition seeking an extraordinary writ as purportedly authorized by section 2337. That remedy is available only to physicians. (See *Landau v. Superior Court* (1998) 81 Cal.App.4th 191 [97 Cal.Rptr.2d 657].) Lee's petition will be denied by separate order filed with this opinion.

licentiate to be examined by one or more physicians and surgeons or psychologists designated by the agency. The report of the examiners shall be made available to the licentiate and may be received as direct evidence in proceedings conducted pursuant to Section 822." (§ 820.)

"The licentiate's failure to comply with an order issued under Section 820 shall constitute grounds for the suspension or revocation of the licentiate's certificate or license." (§ 821.)

"If a licensing agency determines that its licentiate's ability to practice his or her profession safely is impaired because the licentiate is mentally ill, or physically ill affecting competency, the licensing agency may take action by any one of the following methods: [¶] (a) Revoking the licentiate's certificate or license. [¶] (b) Suspending the licentiate's right to practice. [¶] (c) Placing the licentiate on probation. [¶] (d) Taking such other action in relation to the licentiate as the licensing agency in its discretion deems proper. [¶] The licensing agency shall not reinstate a revoked or suspended certificate or license until it has received competent evidence of the absence or control of the condition which caused its action and until it is satisfied that with due regard for the public health and safety the person's right to practice his or her profession may be safely reinstated." (§ 822.)

Most actions taken pursuant to these statutes will have the substantive component that the licensing agency has determined, following examination of the licentiate, that the licentiate's ability to practice his or her profession actually has become impaired because of mental or physical illness. In other words, the examination will have substantiated the presence of mental or physical impairment. Yet what if no definitive answer is available because the examination is never held due to the licentiate's refusal to be examined? That is the situation governed by section 821, and the situation before us.

The sole basis for the accusation was Lee's failure to submit to the examination. What the accusation set forth as the "Cause for Discipline" was detailed as follows: "Respondent [Lee] is subject to disciplinary action under section 821 in that she failed to comply with an order issued under section 820 to submit to an examination to determine whether she is mentally ill to such an extent as to affect her ability to practice registered nursing safely." This was therefore the sole ground for the decision of the administrative law judge adopted by the Board.

And the sole issue before us is whether substantial evidence supports the trial court's decision not to set aside the Board's revocation. (*Sulla v.*

*Board of Registered Nursing, supra,* 205 Cal.App.4th 1195, 1200; *Finnerty v. Board of Registered Nursing, supra,* 168 Cal.App.4th 219, 227.) This very limited scope of our review is not fully appreciated by Lee. The majority of her opening brief is devoted to the issues leading up to her hospital employer concluding her mental state might not be appropriate for a surgical unit nurse. Lee labors mightily to convince us that such a conclusion was completely unwarranted, that the diagnoses of Drs. Zhalkovsky and Kirz were erroneous while those of Drs. Webber, Ho, and Spivey were sound. She also faults how the matter may have been handled by the Board's employees prior to the Board's decision to proceed with the accusation. These efforts might have been relevant if the revocation was actually based on a claimed lack of mental fitness. But matters never got to that stage.

The Board's order for the examination was merely part of the investigative phase. The examination order itself did not deprive Lee of any state or federal due process interest because there was no impairment of her right to practice her profession, which could only happen with a successful accusation leading to the Board imposing discipline. (See *Alexander D. v. State Bd. of Dental Examiners* (1991) 231 Cal.App.3d 92, 96–98 [282 Cal.Rptr. 201]; *Smith v. Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 325–327 [248 Cal.Rptr. 704].) Nor were Lee's privacy rights infringed (see *Kees v. Medical Board* (1992) 7 Cal.App.4th 1801, 1812–1814 [10 Cal.Rptr.2d 112]) insofar as matters had not proceeded beyond the procedural. (See *Humenansky v. Minnesota Bd. of Medical Examiners* (Minn.Ct.App. 1994) 525 N.W.2d 559, 566, citing *Alexander D.*)

All that is relevant is that Lee did not comply with the Board's order to submit to a mental examination. Although Lee argues strenuously that the order should not have been made, the Board's power to make it cannot be the subject of dispute in the face of the Legislature's declaration that "[p]rotection of the public shall be the highest priority for the Board of Registered Nursing in exercising its . . . disciplinary functions. Whenever the protection of the public is inconsistent with other interests . . . , the protection of the public shall be paramount." (§ 2708.1.)

Additional points made by Lee require only the briefest response. We do not consider Lee's argument that her rights under the California Fair Employment and Housing Act (Gov. Code, § 12940) were violated because this claim was not made either in the administrative hearing or before the trial court. (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143 [181 Cal.Rptr. 732, 642 P.2d 792].) Like the trial court, we decline Lee's plea to reduce the discipline selected by the Board. Finally, there is no basis for condemning the Board if it notifies others of its revocation of Lee's license, as it may be required to do. (45 C.F.R. § 60.9(a)(1) (2011).) Such would be a consequence of the Board's action, but not a basis for overturning it.

## DISPOSITION

The judgment denying the petition is affirmed.

Kline, P. J., and Haerle, J., concurred.