HULL, J.
*1342 Appellant Dr. Robert P. Fettgather (Fettgather) appeals from an order of the trial court denying his petition for writ of administrative mandamus. His petition challenges the revocation of his license to practice psychology by Respondent California Board of Psychology (the Board). The trial court denied Fettgather's petition on the ground that the only relevant inquiry before the Board was whether Fettgather failed to comply with an order for an examination under Business and Professions Code section 820 ; undesignated section references will be to this code. Further, the trial court found that "[t]he evidence in the record unquestionably establishes that petitioner failed to submit to the examination that had been ordered in this case."
Fettgather appeals arguing he should be permitted to challenge the merits underlying a section 820 order before he is required to comply with that order. He also argues that revocation of his license pursuant to section 821 for his failure to undergo a section 820 examination is unlawful.
We affirm the judgment of the lower court. We hold that the Board is not required to show good cause for a section 820 order nor is a licensee entitled to challenge the basis for the order before submitting to the required examination. It follows that the question of good cause supporting such an order is not relevant to a revocation of Fettgather's license for noncompliance with the section 820 order. This strikes the appropriate balance between the public and private interests as explained herein.
*229 FACTS AND PROCEEDINGS
Fettgather obtained his California license to practice psychology in 1990.
On April 28, 2011, Fettgather was notified by the Board it was investigating complaints against him concerning his behavior and communications with patients. Board investigator Jeremy Singleton requested that Fettgather contact Singleton to schedule an interview.
*1343 On May 4, Singleton and Fettgather spoke at length on the telephone but Fettgather would not agree to an interview.
On May 13, Fettgather was personally served with an investigational subpoena to appear and give testimony on June 6. Fettgather did not comply with the subpoena.
A second subpoena for testimony was issued for an interview on July 18, and was served upon Fettgather's counsel, who told the Board that Fettgather would not appear for the interview.
On August 8, 2011, a petition to compel a psychiatric evaluation of Fettgather was filed pursuant to section 820. On August 15, 2011, the Board issued an order compelling Fettgather to submit to a psychiatric examination within 30 days. The Board issued an amended order on September 14, 2011, extending the deadline for Fettgather's compliance until October 17 in order to allow the investigative interview to precede the examination. This interview took place on September 26, 2011.
Thereafter, Fettgather's neurologist wrote the Board on October 15, 2011, arguing that a psychiatric evaluation of Fettgather was not needed.
Fettgather did not submit to the ordered evaluation, nor did he file an appeal thereof.
On October 25, 2011, the Board filed an accusation against Fettgather for discipline arising from his failure to comply with the Board's section 820 order.
On May 14, 2012, an administrative law judge (ALJ) conducted a hearing on the accusation and issued a recommendation that the Board revoke Fettgather's license pursuant to sections 821 and 2960 for failure to comply with an order for a mental examination under section 820. In so doing, the ALJ found that Fettgather "willfully failed to comply with an Order of the Board and gave no indication that he will do so in the future. Compliance with Board Orders is essential for public protection. In these circumstances, revocation is the appropriate level of discipline." The ALJ refused to allow the submission of evidence concerning the lack of good cause for the order compelling the examination.
The Board adopted the ALJ's recommended revocation of Fettgather's license on June 28, 2012; the revocation was to become effective on July 27, 2012. Thereafter, Fettgather filed his verified petition for writ of administrative mandamus on July 24, 2012, and the lower court granted his request for a stay of the revocation of his license on July 27, 2012.
*1344 On October 16, 2012, the Board moved to vacate the stay of revocation of Fettgather's license in light of Lee v. Board of Registered Nursing (2012) 209 Cal.App.4th 793, 147 Cal.Rptr.3d 269 ( Lee ). The court held a hearing on this motion on January 4, 2013, ultimately ordering the stay be lifted. Fettgather's license was thereafter revoked.
The parties briefed Fettgather's motion for writ relief, and the court held a hearing on March 1, 2013. On May 9, 2013, the court issued an order denying the requested relief. Relying on Lee, supra, 209 Cal.App.4th 793, 147 Cal.Rptr.3d 269, the trial court found the only facts relevant to Fettgather's challenge to the revocation of his license for failure to submit to a psychiatric *230 evaluation under section 820 were whether he had submitted to the ordered evaluation. It noted it was undisputed that Fettgather did not submit to that evaluation and whether there was good cause supporting that order was not relevant. Further, the trial court found that section 820 did not violate federal or state constitutional due process or privacy interests, ultimately concluding "Respondent's decision revoking petitioner's license for failing to comply with the order directing him to submit to a psychological examination pursuant to Business and Professions Code section 820 is supported by the evidence in the record and is in accord with controlling appellate authority."
Fettgather challenges the trial court on a number of grounds, many of which we need not recount here for reasons set forth below. While many of his arguments are difficult to discern, Fettgather appears to argue that he should have been afforded the opportunity to challenge the propriety of the Board's order requiring him to submit to a psychological evaluation under section 820 at the Board's revocation hearing, despite his noncompliance with that order. Specifically, he argues that his rights to due process of law and equal protection were violated as a result of the ALJ limiting that proceeding to a determination of whether he had complied with what he views as an unconstitutional order obtained without good cause.
He further argues this court should "overturn" Lee, supra, 209 Cal.App.4th 793, 147 Cal.Rptr.3d 269, which was relied upon by the trial court in upholding the Board's license revocation order. While we do not have the authority to "overturn" Lee , we are not bound by that decision.
We will not address arguments not separately stated under a separate heading as noncompliant with California Rules of Court, rule 8.204(a)(1)(B). (See T.P. v. T.W. (2011) 191 Cal.App.4th 1428, 120 Cal.Rptr.3d 477, review denied (2011) 2011 Cal. LEXIS 3990 [declining to consider undeveloped argument not delineated under separate heading].)
*1345 DISCUSSION
I
Standard of Review
A trial court exercises independent judgment in its review of an agency's revocation of a professional license. ( Rand v. Board of Psychology (2012) 206 Cal.App.4th 565, 573-574, 142 Cal.Rptr.3d 288.) On appeal, we review the trial court's decision for substantial evidence, resolving any conflicts in favor of the trial court's judgment. ( Id . at pp. 574-575, 142 Cal.Rptr.3d 288.) Questions of law, however, are subject to de novo review. ( Id . at p. 575, 142 Cal.Rptr.3d 288.) Compliance with the constitution presents a question of law. ( Tafti v. County of Tulare (2011) 198 Cal.App.4th 891, 896, 130 Cal.Rptr.3d 472.)
II
The Statutory Scheme
The Board is entrusted with enforcing and administering the provisions of the Business and Professions Code governing psychologists. (§ 2920.) "Protection of the public shall be the highest priority for the Board of Psychology in exercising its licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." (§ 2920.1.)
The Board is authorized to conduct investigations pursuant to section 820 in order to ensure practitioners are, among other things, of sound mental health. ( § 820 ; 16 C.C.R. § 1380.4 [authorizing Board's executive officer to conduct examinations *231 pursuant to section 820 ]; Arnett v. Dal Cielo (1996) 14 Cal.4th 4, 8-9, 56 Cal.Rptr.2d 706, 923 P.2d 1 ( Arnett ) [citing Brovelli v. Superior Court of Los Angeles County (1961) 56 Cal.2d 524, 528, 15 Cal.Rptr. 630, 364 P.2d 462 and United States v. Morton Salt Co . (1950) 338 U.S. 632, 642-43, 70 S.Ct. 357, 94 L.Ed. 401 ].) Section 820 states in pertinent part:
"Whenever it appears that any person holding a license ... may be unable to practice his or her profession safely because the licentiate's ability to practice is impaired due to mental illness, or physical illness affecting competency, the licensing agency may order the licentiate to be examined by one or more physicians and surgeons or psychologists designated by the agency." ( § 820.)
This report may be received as direct evidence in an accusation brought to revoke a license ( §§ 820, 822, 826 ), but the function of obtaining *1346 it is investigatory. ( Arnett, supra, 14 Cal.4th at p. 9, 56 Cal.Rptr.2d 706, 923 P.2d 1 ; Kees v. Medical Board (1992) 7 Cal.App.4th 1801, 1814, 10 Cal.Rptr.2d 112 ( Kees ); Alexander D. v. State Bd. of Dental Examiners (1991) 231 Cal.App.3d 92, 97, 282 Cal.Rptr. 201 ( Alexander D. ).) Further, the Board is authorized to consider the report in closed session (§ 827), and the report itself remains confidential until an accusation is actually filed. (§ 828.) If an accusation is not filed, the report is kept confidential for a period of five years and thereafter destroyed if no new proceedings are initiated within that period of time. (Ibid .)
"[F]ailure to comply with an order issued under Section 820 shall constitute grounds for the suspension or revocation of the licentiate's ... license." (§ 821.) This is consistent with the Board's regulations, which find failure to more broadly cooperate with an investigation to be "unprofessional conduct" and section 2960, which recognizes the Board's right to revoke a license for "unprofessional conduct." (§ 2960, subd. (k) ["unprofessional conduct" as including violations of regulations]; 16 C.C.R. § 1397.2, subd. (c) ["unprofessional conduct" includes the failure to cooperate with a Board investigation].)
Nothing in the Business and Professions Code or associated regulations defines the requisite threshold for an order under section 820, which speaks of authorization for an order "[w]henever it appears" a person "may be unable to practice his or her profession safely because" that "ability to practice is impaired due to mental illness ..." ( § 820.) Nor does the legislative history shed any light on the level of showing necessary for this inquiry. One court has noted that repetitive section 820 examinations "are permissible if there is a showing of good cause." ( Kees, supra, 7 Cal.App.4th at p. 1814, 10 Cal.Rptr.2d 112.) Another refused to reach the inquiry where the facts of the case established "reasonable cause" for the order. (See Alexander D., supra, 231 Cal.App.3d at p. 98, 282 Cal.Rptr. 201.)
Fettgather requests we determine (1) what standard must be shown for an order under section 820 and (2) when a licensee may challenge that showing. Regarding the first issue, for the reasons that follow, we find, in accordance with the plain wording of the statute, that the Board may issue a section 820 order "whenever it appears" to the Board that a licensee may be unable to practice his profession due to impairment from mental illness or physical illness or physical illness affecting competency. Regarding the second, we need not reach that issue because Fettgather, in refusing to appear for the examination, did not take advantage of his right to a competency hearing ( § 822 ) and so the scope of the issues to be determined in such a hearing are not before us here. It is sufficient *232 for us to hold that a licensee has no right to challenge the basis for a section 820 order before complying with that order. *1347 III
Due Process of Law
Fettgather argues his right to due process of law under the United States and California Constitutions was violated when the Board revoked his license after an administrative hearing wherein he was not permitted to submit evidence challenging the propriety of the section 820 order. There was no violation of his right to due process of law.
A. The U.S. Constitution
The Fourteenth Amendment of the U.S. constitution prohibits state deprivation of "life, liberty, or property without due process of law." ( Dent v. West Virginia (1889) 129 U.S. 114, 121, 9 S.Ct. 231, 32 L.Ed. 623.) Fettgather asserts the right to practice his profession is both a property right ( ibid . ) and a liberty right ( Conn v. Gabbert (1999) 526 U.S. 286, 119 S.Ct. 1292, 143 L.Ed.2d 399 ) that was impinged upon by the Board's actions.
It is settled that Fettgather's right to practice was not implicated by the order for a mental examination. (See Arnett, supra, 14 Cal.4th at p. 9, 56 Cal.Rptr.2d 706, 923 P.2d 1 ; Alexander D. , supra , 231 Cal.App.3d at p. 97, 282 Cal.Rptr. 201 ; see also Kees , supra , 7 Cal.App.4th at p. 1814, 10 Cal.Rptr.2d 112 [construing investigational power of similar statute].) The order did not immediately threaten his license, but was merely an authorized administrative inquiry, falling squarely within the police power to protect the public. (See Arnett , at pp. 7-9, 56 Cal.Rptr.2d 706, 923 P.2d 1 ; Alexander D ., at p. 97, 282 Cal.Rptr. 201.)
The question then becomes, was Fettgather's right to due process violated by the ALJ's refusal to allow him to challenge the validity of the section 820 order at the proceedings for revocation of his license pursuant to section 821's mandate that "failure to comply with an order issued under Section 820 shall constitute grounds for the suspension or revocation of the licentiate's ... license." The court in Lee, supra, 209 Cal.App.4th 793, 147 Cal.Rptr.3d 269 answered this question in the negative. We agree with Lee .
In Lee , the court was asked to decide whether the trial court erred in upholding the revocation of a nursing license for failure to comply with an order to undergo a mental health assessment pursuant to section 820. Fettgather suggests the Lee court only considered "whether substantial evidence supports the trial court's decision not to set aside the Board's revocation."
But taken in context, the Lee court's statement regarding a failure to comply shows that it was rejecting the argument Fettgather advances and *1348 evidence submitted on the merits of whether a mental fitness exam was warranted was irrelevant to a section 821 proceeding. ( Lee , supra , 209 Cal.App.4th at pp. 797-798, 147 Cal.Rptr.3d 269.) It determined such evidence would only be relevant if the appellant had actually submitted to the order. ( Id . at p. 798, 147 Cal.Rptr.3d 269.) Because she did not, all that was relevant to the propriety of the license revocation was her failure to comply with the order. ( Ibid . ) It separately determined on those facts that there was no violation of federal or state due process, nor privacy rights because the order at issue did not impair her right to practice and the "matters had not proceeded beyond the procedural." ( Ibid . )
While Fettgather's interest in his license was ultimately implicated by the proceedings to revoke for failure to comply under *233 section 821, as we explain more fully, post , we find the appropriate balance between the private and public interest is struck through requiring Fettgather to submit to the section 820 mental examination and challenge the results of that examination only after a formal accusation alleging mental illness is brought. (See Mathews v. Eldridge (1976) 424 U.S. 319, 333-335, 96 S.Ct. 893, 47 L.Ed.2d 18 [noting fluid nature of inquiry and articulating factors to be considered].)
B. The California Constitution
Fettgather argues he must be afforded the opportunity to challenge the section 820 order at a proceeding to revoke his license pursuant to section 821 and his inability to do so violated his right to due process under the California Constitution. For the same reasons that we reject his federal constitutional claim, we reject this one.
As noted, the issuance of a section 820 order for a mental competency exam does not impact Fettgather's right to practice ( Alexander D ., supra , 231 Cal.App.3d at p. 98, 282 Cal.Rptr. 201 ; Lee , supra , 209 Cal.App.4th at p. 798, 147 Cal.Rptr.3d 269 ) and his right to privacy implicated by that order is adequately protected by the statutory mechanism that keeps the investigation confidential up until the filing of an accusation charging incompetency on the merits. (See §§ 827, 828; Lee , at p. 798, 147 Cal.Rptr.3d 269 ; Kees, supra, 7 Cal.App.4th at pp. 1812-1814, 10 Cal.Rptr.2d 112.)
Fettgather was fully informed of the basis for the investigation, was provided an opportunity to respond to the responsible government official, and was aware of the potential consequences of noncompliance with the section 820 order. That notwithstanding, Fettgather was uncooperative with attempts to investigate the claims that he was unfit, initially refusing to voluntarily submit to an interview, failing to comply with two subpoenaed investigational interviews, and finally providing information to investigators only on the condition that the interview would not be under oath. His repeated refusal to engage in the statutory process undermines his claim that he was deprived of due process of law.
*1349 Finally, the governmental interest involved in requiring compliance with a section 820 order is compelling. "Protection of the public shall be the highest priority for the Board of Psychology in exercising its licensing, regulatory, and disciplinary functions." (§ 2920.1.) Section 820 was enacted for the express purpose of creating a mechanism to ensure that the licensing agency had the power to revoke the license of healing arts professional who was mentally ill. ( Alexander D ., supra , 231 Cal.App.3d at p. 97, 282 Cal.Rptr. 201.) The actual ability to investigate whether the medical professional is indeed mentally ill is paramount to that call. That a revocation order may be issued suspending a license for noncompliance with a section 820 order in pending revocation proceedings further underscores the importance of this interest. (See Gov. Code, § 11529(a) ["The failure to comply with an order issued pursuant to Section 820 of the Business and Professions Code may constitute grounds to issue an interim suspension order under this section"].)
Moreover, the government's interest would be severely impacted if licensees were permitted to delay investigations the licensee believed were unwarranted because it would unnecessarily delay the investigation and ultimate determination of mental fitness. Requiring compliance with a section 820 order, in fact, not only streamlines the procedure, but also protects a licentiate from groundless charges because it allows the Board to initially and *234 confidentiality determine that mental state prior to the bringing of any accusation to revoke a license. ( Alexander D ., supra , 231 Cal.App.3d at p. 98, 282 Cal.Rptr. 201.) Because it is undisputed that Dr. Fettgather failed to comply with the section 820 order, he was not entitled to challenge the merits of the order at the revocation proceeding.
IV-V**
Equal Protection of the Law
DISPOSITION
The judgment of the trial court is affirmed. The Board is entitled to costs on appeal. ( Cal. Rules of Court, rule 8.278.)
We concur:
RAYE, P.J.
MURRAY, J.

See footnote *, ante.