Filed 10/27/20  Yang v. Board of Registered Nursing CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BIN YANG, | B298991 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS174436) |
| v. | |
| BOARD OF REGISTERED NURSING, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Bin Yang, in pro per, for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Carl W. Sonne, Assistant Attorney General, Marc D. Greenbaum and Vinodhini Ramagopal, Deputy Attorneys General for Defendant and Respondent.

———————————

In 1995, Bin Yang obtained a license to practice as a registered nurse from respondent Board of Registered Nursing (Board). Yang later allowed her license to lapse. In 2005, Yang suffered a criminal conviction for assaulting a flight attendant. In 2008, Yang was arrested in Wisconsin for unlawful entry into a building or construction site; the charge was subsequently dismissed.

Yang later sought to renew her nursing license, prompting the Board to issue an order requiring her to submit to a mental health examination. The Board issued the order because it had concluded that Yang's 2005 conviction and 2008 arrest indicate that her ability to practice as a registered nurse safely may impaired by a mental illness. Yang refused to submit to the mental health examination because, inter alia, she wanted the examiner to be from a university.

The Board responded by initiating administrative proceedings against Yang. At the conclusion of those proceedings, the Board revoked Yang's nursing license. Yang thereafter filed a petition for writ of mandate to set aside the Board's decision. The trial court ultimately entered a judgment denying Yang's petition.

On appeal, Yang, who is self-represented, claims the trial court: (1) erred by failing to consider evidence that she did not present during the administrative proceedings; (2) was biased against her; and (3) otherwise erroneously denied her writ petition. The first two contentions fail because Yang does not show the trial court manifestly abused its discretion in excluding the new evidence or that the court exhibited bias against her. We reject the last claim of error; Yang may not challenge the validity of the Board's examination order without first complying with the

2

order. Further, to the extent Yang intended to level any other claims of error, she waived them by failing to provide any discernible relevant legal argument in support of those claims. We thus affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize only those facts that are relevant to this appeal.[1]

In July 1989, Yang earned a Bachelor/Doctor of Medicine degree from Fudan University in China. Yang later moved to the United States, and on August 8, 1995, the Board issued her a license to practice as a registered nurse.

On March 30, 2005, Yang was charged in Texas with assaulting a flight attendant while on a Southwest Airlines flight. On November 16, 2005, Yang pleaded guilty to one count of assault within the special aircraft jurisdiction of the United States. The federal court sentenced Yang to five years of probation and required her to attend anger management classes.

On February 18, 2008, Yang visited a state office in Wisconsin for the Department of Regulation and Licensing, seeking to discuss her medical license application with a specific state employee. After Yang entered a secured portion of the building, a state police officer was called to the scene. "Yang was agitated and uncooperative with [the officer], refusing to provide her identification or answer questions." Although Yang initially

---

[1] Our procedural and factual background is largely taken from undisputed portions of the trial court's final ruling. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling].)

resisted arrest, the officer ultimately succeeded in handcuffing Yang.[2] Yang admitted to the officer that she had entered the secured part of the building, was on federal probation, and did not have permission to travel to Wisconsin. The officer issued Yang a citation and released her; she was not prosecuted, and her misdemeanor case was dismissed on March 27, 2008.

After several years of inactivity, Yang requested that the Board renew her nursing license. In the course of processing Yang's request, the Board discovered Yang's 2005 conviction and her 2008 arrest.

On March 10, 2017, the Board issued to Yang an order requiring her to submit to a mental examination pursuant to Business and Professions Code[3] section 820 (examination order). The Board issued the examination order because it found that Yang's ability to practice safely as a registered nurse could be impaired due to mental illness. The Board based this finding on Yang's 2005 conviction for assault and her 2008 arrest. The order stated the examination would be conducted by a physician specializing in psychiatry or a psychologist selected by the Board and would be conducted within 30 days of service of the order. The examination order admonished Yang that failure to comply therewith would constitute grounds for disciplinary action against her nursing license, pursuant to section 821.

On March 1, 2018, the Board filed a first amended accusation against Yang for failure to comply with the order.

---

[2] The trial court's final ruling on Yang's writ petition notes that Yang conceded the officer arrested her for unlawful entry into a building or construction site.

[3] Undesignated statutory citations are to the Business and Professions Code.

4

On March 13, 2018, an administrative law judge (ALJ) held a hearing on the matter. Yang testified at the hearing that she "was willing to be evaluated by an examiner who worked for a university," but the Board disciplinary officer assigned to her case "did not want a university doctor to examine Yang because Yang '[knew] all the doctors.'" Conversely, the disciplinary officer testified that although the Board does not bar doctors from universities from conducting its mental health examinations, the disciplinary officer had "no way of knowing if a . . . doctor [approved to undertake such examinations] works for a university." The disciplinary officer also claimed that because a doctor "would state where he or she works as part of the vetting process[,] . . . the doctor's information is 'highly protected by HIPPA [*sic*].'"

On April 2, 2018, the ALJ issued a proposed decision that recommended that the Board: (1) revoke Yang's license for failure to comply with the examination order, and (2) require Yang to pay the Board's costs of investigation and prosecution in the amount of $4,752.50 if and when her license is reinstated. The ALJ reasoned Yang lacked "standing to challenge the examiner selected or the examination process" because she refused to comply with the order. The ALJ also found "[t]he Board demonstrated the minimum threshold for the issuance of a section 820 order" because it "had legitimate concern over Yang's ability to safely practice nursing due to her conviction in 2005 and her arrest in 2008." The ALJ concluded that "[a]s Yang failed to dispel the Board's concerns about her ability to safely practice, the interests of public protection warrant revocation of her license." On June 5, 2018, the Board issued its decision and

order adopting the ALJ's proposed decision, effective July 5, 2018.

On May 12, 2018 and June 8, 2018, Yang sent e-mails to the Board wherein Yang asserted, inter alia, that "she already had been evaluated by two California experts, [including] one at UCLA, and both the California Medical Board and Texas federal court accepted his report"; and that Yang suffered an injury from "a serious auto accident in 1997" that deprived her of the strength necessary to "punch that airline attendant's stomach and make her fall . . . ." Yang claimed that she pleaded guilty in 2005 simply "because she had no witness and her attorney advised her to do so." The Board treated Yang's e-mails as a request for reconsideration of its decision, and the Board denied that request on June 29, 2018.

On July 30, 2018, Yang, who was self-represented, filed a petition for writ of mandate, seeking a ruling directing the Board to vacate its order revoking her nursing license. Yang argued that "the Board did not properly carry out section 820 and the decision to revoke her nursing license was thereby an abuse of discretion."

On January 10, 2019, Yang filed a motion seeking (among other things) leave to augment the record to include a report describing a CT scan Yang had in 1997 (1997 CT scan report) and a psychological evaluation from UCLA (UCLA psychological evaluation).

On March 21, 2019, the trial court denied Yang's request to augment the record. The court found that Yang failed to provide "a basic evidentiary foundation of what [each] document is and why it is relevant to Yang's administrative proceeding"; "there is no evidence logically connecting the CT scan to [Yang's] lack of

6

physical strength to punch the airline attendant"; "Yang has produced no evidence supporting her assertion that, if she had been reasonably diligent since November 1997 [(i.e., when the scan was conducted)], she could not have made this connection earlier and produced [the 1997 CT scan report] at the 2018 administrative hearing"; and "Yang provide[d] no evidence or argument to support" augmenting the record to include the UCLA psychological evaluation.

On July 2, 2019, the trial court issued a ruling denying Yang's petition for writ of mandate. In pertinent part, the court reasoned that "[Yang's] arguments about the merits of the incidents forming the basis for the [examination o]rder are irrelevant" because "[c]ase law establishes that a licensee has no due process right to challenge the reasons for a section 820 order before submitting to the examination." The trial court also rejected Yang's argument that "the Board should have scheduled a university doctor to perform the mental examination" because "Section 820 permits the board to choose the [examining] professional from its approved list" and "there is no reason to believe that a university professional would have any different bias than a private practitioner." In addition, the court ordered the parties to meet and confer and submit a proposed judgment along with any unresolved objections for the court's review.

On the date on which the trial court issued its ruling, Yang filed a premature notice of appeal of the court's decision.[4]

_____

[4] We exercise our discretion under California Rules of Court, rule 8.104(d)(2) to consider the notice of appeal as if it were timely filed immediately after the September 17, 2019 judgment. (See Cal. Rules of Court, rule 8.104(d)(2) ["The

7

On July 4, 2019, Yang filed an ex parte application for reconsideration of the trial court's ruling on her petition. On July 5, 2019, the trial court denied Yang's ex parte application because it lacked proper notice, there was no showing of an emergency, and the application was without merit.

On July 11, 2019, Yang filed a motion for reconsideration of the denial of her petition.

On September 17, 2019, the trial court denied Yang's motion for reconsideration. It found Yang failed to comply with California Rules of Court, rule 3.1112(a) by, inter alia, not including a notice of hearing with the motion; omitting the affidavit required by Code of Civil Procedure section 1008, subdivision (b); and failing "to provide any new facts, circumstances, or law in support of her motion for reconsideration . . . ."

Also on September 17, 2019, the trial court entered a judgment denying Yang's petition for writ of mandamus. The judgment incorporated by reference the court's July 2, 2019 ruling denying the petition, and stated that the court had rendered its decision upon "having reviewed the administrative record, considered all of the arguments of counsel, . . . and . . . having exercised [the court's] independent judgment . . . ."

_____

reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment."]; cf. *Castillo v. Glenair, Inc.* (2018) 23 Cal.App.5th 262, 275 ["Because the [plaintiffs] filed their notice of appeal before the trial court entered judgment on its order granting summary judgment, the notice of appeal was premature. Nonetheless, we have jurisdiction to consider the appeal because the trial court later filed a final judgment as to the [plaintiffs]."].)

8

## DISCUSSION

We observe that much of Yang's briefing is disjointed, devoid of record citations, and vague. We nonetheless discern the following claims of error: (1) The trial court excluded certain evidence Yang did not present during the administrative proceedings; (2) the court was biased against her; and (3) the court erred in denying her petition for writ of mandate.

For the reasons discussed below, we reject these arguments, and conclude the remainder of Yang's challenges to the trial court's judgment are meritless or have been waived. Consequently, Yang fails to overcome the presumption of correctness accorded to the trial court's judgment. (See *Shenouda v. Veterinary Medical Bd.* (2018) 27 Cal.App.5th 500, 512–514 [noting that "a judgment denying a petition for writ of administrative mandate" is "presumed correct" and "the appellant bears the burden to affirmatively demonstrate error" and "show that the error was prejudicial"]; see also *Scholes v. Lambirth Trucking Co.* (2017) 10 Cal.App.5th 590, 595 ["On appeal, a party challenging an order has the burden to show error by providing an adequate record and making coherent legal arguments, supported by authority, or the claims will be deemed forfeited. [Citations.] The rules of appellate procedure apply to [appellant] even though he is representing himself on appeal. [Citation.] A party may choose to act as his or her own attorney. We treat such a party like any other party, and he or she ' "is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]" ' [Citation.]"].)

9

## A. The Trial Court Did Not Err in Excluding Evidence That Yang Had Failed to Introduce During the Administrative Proceedings

" 'The general rule is that a hearing on a writ of administrative mandamus is conducted solely on the record of the proceeding before the administrative agency.  [Citation.]' [Citation.]  Augmentation of the administrative record is permitted only within the strict limits set forth in [Code of Civil Procedure] section 1094.5, subdivision (e) . . . ."  (*Pomona Valley Hospital Medical Center v. Superior Court* (1997) 55 Cal.App.4th 93, 101 (*Pomona Valley Hospital Medical Center*).)

Code of Civil Procedure section 1094.5, subdivision (e) provides in pertinent part:  "Where the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent [agency], it may enter judgment . . . remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."  (Code Civ. Proc., § 1094.5, subd. (e).)

"In the absence of a proper preliminary foundation showing that one of the exceptions noted in [Code of Civil Procedure] section 1094.5, subdivision (e) applies, it is error for the court to permit the record to be augmented.  [Citation.]  Determination of the question of whether one of the exceptions applies is within the discretion of the trial court, and the exercise of that discretion will not be disturbed unless it is manifestly abused."  (*Pomona Valley Hospital Medical Center*, *supra*, 55 Cal.App.4th at p. 101.)

During the proceedings below, Yang conceded in her motion to augment that neither the 1997 CT scan report nor the UCLA psychological evaluation is in the administrative record. Yang appears to contend that she did not submit her 1997 CT scan report during the administrative proceedings because "[t]he first time when [she] could link her head injury with the Southwest Airlines issue was [in] March of 2018 when she was defending herself at the administrative hearing with the nursing board." It further appears Yang is arguing she did not provide the ALJ with a copy of the UCLA psychological evaluation because she "could not anticipate that [the Board] assumed all mental exams were done in TX."

Yang provides no explanation as to why she could not, in the exercise of reasonable diligence, have submitted the 1997 CT scan report and the UCLA psychological evaluation to the ALJ prior to the conclusion of the administrative proceedings. Rather, she apparently contends that the Board and/or the ALJ "easily" could have obtained these documents on their own. She does not cite any authority showing that the Board or the ALJ was obligated to do so.

Yang also seems to argue the trial court erred in failing to consider a letter authored by Dr. Martin Weiss after the conclusion of the administrative proceedings (Weiss letter). That correspondence supposedly "explain[ed] the connection between [Yang's] injury" from the automobile accident and her "inability" to harm the flight attendant in 2005. Yang admits she submitted the Weiss letter to the trial court as an attachment to her reply brief on the merits of the petition, rather than as an enclosure to a motion to augment the record. In any event, Yang does not explain why she failed to have Dr. Weiss prepare this letter at an

earlier point in time so that she could have submitted it to the ALJ.

By failing to advance any argument that she satisfied the requirements of Code of Civil Procedure section 1094.5, subdivision (e), Yang has waived her claim that the trial court manifestly abused its discretion in declining to consider the 1997 CT scan, the UCLA psychological examination, and the Weiss letter. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [" 'Appellate briefs must provide argument and legal authority for the positions taken. . . .' 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "].)

Yang also suggests for the first time in her reply that she did not submit these documents to the ALJ because she "only had a few hours to prepare for the hearing since [the Board's attorney] refused to give her an extension to handle her urgent business issue." We disregard this argument because Yang did not timely raise it. (See *Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc.* (1995) 31 Cal.App.4th 1323, 1326, 1333 ["To the extent [appellant] raised new arguments . . . in its reply brief on appeal, we do not reach them."].)

## B.    Yang Fails to Establish that the Trial Court Was Biased Against Her

Yang seems to complain that the trial court was biased against her. Although Yang's argument on this point is not altogether clear, she apparently claims the trial court should not have denied her July 4, 2019 ex parte motion for reconsideration and the court otherwise erred in rejecting her claim that the Board illegally revoked her nursing license.

Yang's failure to tether her claim of bias to a statute or constitutional provision presents difficulties on appeal as to what standard of review we should apply to her bias claim. She appears to be claiming that the trial court was biased because it ruled against her several times. That would not be grounds for a due process violation because "[t]he mere fact that the trial court issued rulings adverse to [Yang] on several matters in this case, even assuming one or more of those rulings were erroneous," is insufficient to give rise to a violation of her "due process right to an impartial judge." (See *Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 673–675.) To the extent Yang is relying on an authority other than constitutional guarantees of due process, she has not identified any such authority, which would constitute waiver of any such claims. (See *Cahill, supra,* 194 Cal.App.4th at p. 956.)

## C. The Trial Court Did Not Err in Denying Yang's Writ Petition

As we mentioned in the Factual and Procedural Background, the trial court denied Yang's writ petition because: (1) Yang could not challenge the basis of the examination order without first complying with the order; and (2) the Board was not obligated to honor Yang's request to be examined by a doctor employed by a university. Each ground presents a question of law that we review de novo. (See *Fettgather v. Board of Psychology* (2017) 17 Cal.App.5th 1340, 1342, 1345 (*Fettgather*) ["On appeal, we review the trial court's decision [on a petition for writ of mandate concerning an agency's revocation of a professional license] for substantial evidence, resolving any conflicts in favor of the trial court's judgment. [Citation.]

13

Questions of law, however, are subject to de novo review."].) Applying that standard, we conclude the trial court did not err.

Section 820 provides in relevant part: "Whenever it appears that any person holding a license, certificate or permit . . . may be unable to practice his or her profession safely because the licentiate's ability to practice is impaired due to mental illness, or physical illness affecting competency, the licensing agency may order the licentiate to be examined by one or more physicians and surgeons or psychologists designated by the agency. The report of the examiners shall be made available to the licentiate and may be received as direct evidence in proceedings conducted pursuant to Section 822."[5] (See § 820.)

In turn, section 821 provides: "The licentiate's failure to comply with an order issued under Section 820 shall constitute grounds for the suspension or revocation of the licentiate's certificate or license." (§ 821.) Similarly, section 822 authorizes the agency to revoke a license if it "determines that its licentiate's ability to practice his or her profession safely is impaired because the licentiate is mentally ill . . . ." (See § 822.)

---

[5] The *Fettgather* court described the investigatory purpose of this report: "This report may be received as direct evidence in an accusation brought to revoke a license [citations], but the function of obtaining it is investigatory. [Citations.] Further, the Board is authorized to consider the report in closed session [citation], and the report itself remains confidential until an accusation is actually filed [citation]. If an accusation is not filed, the report is kept confidential for a period of five years and thereafter destroyed if no new proceedings are initiated within that period of time." (*Fettgather*, *supra*, 17 Cal.App.5th at pp. 1345–1346.)

14

Relying on these statutes, the First and Third Appellate Districts have held that a licensed health care professional may not contest the validity of an examination order issued pursuant to section 820 without first complying with the order. (See *Fettgather*, *supra*, 17 Cal.App.5th at pp. 1342, 1346–1349; *Lee v. Board of Registered Nursing* (2012) 209 Cal.App.4th 793, 796–798 (*Lee*).) These courts observed that the only fact relevant in a license revocation proceeding under section 821 is whether the licensee complied with the examination order. (See *Fettgather*, *supra*, at pp. 1347–1348; *Lee*, *supra*, at pp. 797–798.) This approach does not violate the licensee's state and federal due process rights because allowing him or her to challenge only the results of a section 820 examination properly balances private and governmental interests, including the agency's interest in protecting the public.[6] (See *Fettgather*, at pp. 1347–1349; citing *Lee*, at pp. 797–798; see also § 2708.1 ["Protection of the public shall be the highest priority for the Board of Registered Nursing in exercising its licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."].)

The trial court relied upon *Fettgather* and *Lee* in its ruling denying Yang's writ petition. With the exception of one vague passage in her reply brief, Yang does not advance any argument

---

[6] *Fettgather* observed that the right to practice is "not implicated by the order for a mental examination" because such an order does "not immediately threaten" one's license, but is merely "an authorized administrative inquiry[ ] falling squarely within the police power to protect the public." (*Fettgather*, *supra*, 17 Cal.App.5th at p. 1347.)

15

establishing that either case was wrongly decided.  Instead, Yang apparently claims that *Lee* is distinguishable because "[Yang] already had two mental exams done and was willing to go to any university experts of [the Board] from day 1."  In making this argument, Yang ignores the fact that *Lee* affirmed an order denying a writ petition filed by a licensee who had been evaluated by five mental health professionals, but not one selected by the regulatory board.  (See *Lee*, *supra*, 209 Cal.App.4th at p. 795.)

In any case, the decision in *Lee* hinged on the licensee's refusal to submit to a mental health examination.  (See *Lee*, *supra*, 209 Cal.App.4th at pp. 797–798.)  Yang's willingness to be examined by a professional *she believes* is qualified does not distinguish her appeal from *Lee*.  (Cf. *id.* at pp. 795, 799 [affirming the trial court's denial of the writ petition, even though the Board rejected the licensee's attempt to "have the examination conducted by a psychiatrist of her choosing"].)  In sum, we agree with *Lee* and *Fettgather* and hold that Yang cannot challenge the propriety of the examination order without first complying with that order.

Insofar as Yang reasserts her contention that the Board must select an examiner employed by a university, we reject that claim.  Section 820 authorizes *the Board* to "designate[ ]" a "physician[,] . . . surgeon[,] or psychologist[ ]" to conduct the examination.  (See § 820.)  Nothing in section 820 requires the Board to utilize "university experts" for mental health examinations.  (See *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 347 ["Words of a statute are to be given a plain and commonsense meaning.  When they are clear and unambiguous, there is no need to resort to other

16

indicia of legislative intent, such as legislative history, to construe the statute."]

## D. Yang's Remaining Challenges to the Trial Court's Judgment Fail

Yang repeatedly complains that the Board's attorney wanted Yang to submit to " 'ANY EXAM' by 'ANYONE.' " It seems Yang is arguing that the Board violated section 820 by requiring Yang to be examined by any layperson, instead of "one or more physicians and surgeons or psychologists designated by the agency." (See § 820.)

This assertion is squarely belied by the record. At the administrative hearing, the Board's counsel simply asked Yang whether she would submit to an exam conducted by "any doctor" assigned by the Board. Yang then responded, "I have to look at it." Thus, Yang fails to establish that the Board's counsel violated section 820.

Further, Yang repeatedly argues the trial court "knew that [the Board's] analyst was lying about that they had no access to expert data due to HIPAA [citation], and [the Board] does not exclude university experts [citation]." Yang appears to be referring to: (1) the trial court's remark that the disciplinary officer mistakenly asserted that the identity of an examiner's employer would be protected by HIPAA; and (2) the fact the trial court replied "right" when Yang asserted at a hearing that the Board does not "exclude experts from [a] university." These statements have no apparent relevance to the propriety of the trial court's judgment.

The rest of Yang's briefing raises numerous complaints that, to the extent we understand them, have no apparent legal significance. As illustrative is her claim that "there is no time

17

limit to set aside a judgement obtained by fraud." Apart from vaguely asserting that the Board violated sections 820 and 821, she fails to identify any fraud underlying the trial court's judgment or otherwise explain the relevance of this legal proposition to this appeal. Similarly untethered to the issues in this appeal, Yang levels the following charge against the trial court: "[T]he Superior Court Judge misled Appellant to go against her common sense and deprived her constitutional rights [*sic*] to protect herself and granted [the Board] unlimited rights to abuse and harm Appellant." She similarly fails to explain the relevance of her claim that a medical board required her to pay $400 to have an expert review her medical education.

Because we are under no obligation to " 'develop [Yang's] arguments' " for her, we deem as waived all such other remaining untethered appellate challenges. (See *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

## DISPOSITION

The judgment is affirmed. The Board is awarded its costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.

We concur:


ROTHSCHILD, P. J.                    SINANIAN, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18