Filed 12/2/24  Riaz v. State of California CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SAMREEN RIAZ,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>    Defendants and Respondents. | F087504<br><br>(Super. Ct. No.  VCU298300)<br><br>**OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Samreen Riaz, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Iveta Ovsepyan, Assistant Attorney General, Bruce D. McGagin and Jamil R. Ghannam, Deputy Attorneys General, for Defendant and Respondent State of California.

Salinas Law Group and Richard S. Salinas for Defendant and Respondent Steven M. Cantrell, M.D.

-ooOoo-

Samreen Riaz was a licensed dentist—she lost her license to practice because of the facts underlying this case.  According to her, there is an elaborate conspiracy to

harass, stalk, threaten, and ultimately prevent her from testifying in a separate "whistleblower" case involving "OSHA and HIPPA Violations"[1] at a medical facility.[2]

To that end, Riaz filed a complaint raising numerous claims against numerous individuals and government entities. The opposing parties challenged the complaint's viability through demurrer and anti-SLAPP proceedings. The trial court sustained the demurrers and granted the anti-SLAPP motion, leaving Riaz with no viable claim.

On appeal, Riaz defends her complaint by essentially reiterating her trial court argument. As explained in detail below, we find no merit in her contentions and affirm the judgments.

## BACKGROUND

The facts underlying this case involve four discrete events. Due to the case's posture, the following summary is based on the complaint, trial court record, and briefing on appeal.

First, Riaz sued a medical facility and suffered an alleged eye injury while attempting to testify in that case. Second, she sought treatment for that eye injury but was refused service and then sued that doctor in small claims court. Third, that doctor reported Riaz to the Dental Board of California which, in turn, initiated mental health competence proceedings against Riaz. Fourth, Riaz's license to practice dentistry is revoked, and she files the complaint at issue in this case.

*Initial Lawsuit Against Medical Facility*

Acting as a "whistleblower," Riaz "disclosed … OSHA, Hippa, recruited patient, potential insurance fraud and anti-competent activities in the market" at a medical

---

[1] All spelling, punctuation, and other typographical errors in quoted material are retained from the original source.

[2] See Occupational Health and Safety Act (29 U.S.C. section 651 et seq. (OSHA) and Health Insurance Portability and Accountability Act (42 U.S.C. section 1320d et seq. (HIPAA).

facility.  After filing a lawsuit on that basis, Riaz suffered "organized harassment," culminating in "permanent eye damage" after a sheriff-department employee pointed a finger in her face while she attempted to enter the courthouse in her "whistleblower" case.  Thereafter, she became "a regular victim of pointing fingers at her face by a random stalker[.]"

*Visit to Doctor for Eye Injury*

Riaz visited Dr. Cantrell to treat an eye injury.  She alleged Cantrell did not acknowledge any injury to her eye but did refer her " 'to a pediatric specialist' " who "sees both adults and pediatric."  Cantrell became combative, refused to answer Riaz's questions, and declined to treat Riaz.  Riaz asked if the refusal was based on her "skin color," to which Cantrell "responded now I don't want to give you a prescription either."[3]

The next day, Riaz filed a complaint with the Medical Board of California.  Several days later, she filed a small claims case against Cantrell, essentially alleging discrimination, negligence, and retaliation.  A small claims judgment was eventually entered in Cantrell's favor.

*Report to Dental Board*

Meanwhile, Cantrell apparently[4] reported Riaz to the Dental Board.  The Dental Board issued an order to Riaz to comply with a mental health examination "to evaluate

---

[3] Riaz's "skin color" is not disclosed in the record.  We note she repeatedly describes herself as a "0.4 percent religious Muslim minority" or "a 0.2 percent muslim immigrant minority, women of color, patient, member of public, consumer, court witness who is going thru whistleblower retaliation, whose privacy breached by conspiratorial activity among defendants[.]"

[4] The Dental Board's records are not fully a part of the record in this case.  According to one filing by Cantrell, he transmitted the small claims "pleadings[,] which were public records," to the board because he was "concerned" with Riaz's "well-being as well as the safety of her patients."  He denied "disparag[ing]" Riaz and "provid[ing] anything else" to the Board.

her fitness to practice safely ….'' (See Bus. & Prof. Code, § 820.)[5]  When Riaz failed to comply with the order, the Dental Board sought statutory discipline.  As Riaz continued to disobey the order, her license to practice dentistry was ultimately revoked.  The discipline was apparently[6] posted "for public review on the dental board website."

*Instant Complaint and Judgment*

Riaz filed the instant complaint on May 15, 2023.  She sued Cantrell, various government entities, and several individuals working for those entities (collectively, the State).[7]  Roughly stated, and described in greater detail below, the complaint alleged an elaborate conspiracy among all the defendants to injure Riaz, to intimidate her to prevent her from testifying, and to retaliate against her for the "whistleblower" case.

The State, represented by the Attorney General, and Cantrell each demurred to the complaint.  Cantrell also filed an anti-SLAPP motion.  (See Code Civ. Proc., § 425.16.)  The trial court sustained the demurrers and granted the anti-SLAPP motion, and Riaz filed an amended complaint.  The court again sustained demurrers, resulting in total dismissal.

---

[5] Subsequent statutory references are to the Business and Professions Code unless otherwise stated.

[6] By apparently we mean what exactly was posted online is not made clear in the record.  Riaz variously describes it as "misleading information regarding [her] health" or "defamatory biased information," among other permutations.  Generally, it is not uncommon for licensing boards to post professional discipline online for public view.

The complaint does state an "accusation" was posted on the Dental Board's "website."  The trial court judicially noticed the accusation.  The accusation simply states Riaz was subject to discipline for failing "to comply with the Board's Order Compelling Mental or Physical Examination[.]"  The accusation did not state Riaz was mentally unfit—it did not even describe whether the underlying concern was mental or physical.

[7] Riaz also included attorneys involved in her previous cases as defendants, but did not allege any actions against them.

## DISCUSSION

In essence, this appeal presents two questions.[8]  One, did the trial court err in granting the anti-SLAPP motion?  Two, did it err in sustaining the demurrers?  We conclude the court did not err.

## I.  Anti-SLAPP Motion

Cantrell filed an anti-SLAPP motion seeking to strike various allegations and causes of action from the complaint.  Riaz opposed, but the trial court granted the motion.  It did not err in granting the motion.

### A.  Additional Background

In the anti-SLAPP motion, Cantrell argued his furnishing information to the Dental Board was protected activity and defeated claims "for discrimination, fraud, defamation, retaliation[,] and intentional infliction of emotional distress[.]"  In opposition, Riaz filed several documents equating to requests for judicial notice[9] and a brief on the anti-SLAPP issue.

In the original complaint, Riaz alleged Cantrell "stepped outside the role of a doctor when he retaliated and acted with malice due to getting sued" in small claims

---

**8** The briefing and the complaints below are at times difficult to decipher, but we distill them to two basic objections.  For example, in one statement in Riaz's opening brief, she states, "Dbca, bad faith ( pre textual retaliatory) 'market-sensitive' decisions of the disciplinary proceeding with the aim to Restrict professions of the plaintiffs (**Opthalmology patient./consumer member of public**), without following proper due process, failed to follow administrative procedure act from the beginning **when one-sided order gained from president of dental Board(in violation of dental practice act 1600) who is an active member of dentist, without knowledge of plaintiff /Patient, consumer and member of public**(Plaintiff is a witness in court proceedings in OSHA, hipaa violation and public safety issues [citations]) when nothing patient/ consumer(who happens to hold dental license) or plaintiff has done constitute unsafe or illegal practice of dentistry."

**9** The request for judicial notice sought to admit a complaint Riaz made to the Medical Board.

court. She further alleged Cantrell "submitted multiple documents" to the Dental Board "for retaliatory motives … and not out of concern for … health" and safety.

In opposition to the anti-SLAPP motion, Riaz claimed again Cantrell "made inaccurate, knowingly misleading statements to the [D]ental [B]oard to defame and harm [Riaz] based on disclosing patient information." She specifically noted Cantrell "admit in his declaration  purpose of obtaining further information on patient by disclosing … patient information … not to protect patient but to … establish [the] allegation against him [was] Untrue." Attached to this opposition was roughly 110 pages of exhibits, but no such admission from Cantrell.[10]

The trial court found Cantrell submitted the small-claims pleadings to the Dental Board and acknowledged Cantrell disavowed any improper purpose. It concluded furnishing those documents to the board constituted protected activity. It then held Riaz failed to establish a probability to prevail on the challenged claims because she submitted " 'a jumble of documents' " and did not " 'organize the evidence [or] develop … arguments[.]' " The court granted the motion and struck from the complaint "causes of action and allegations … concerning defamation, medical malpractice[,] discrimination …, retaliation, fraud, breach of fiduciary duty, conspiracy, and" intentionally inflicting emotional distress.[11]

---

[10] It appears Riaz divines this admission from Cantrell's declaration submitted with his anti-SLAPP motion. There, Cantrell declared, in the small claims case, he submitted declarations from attorneys involved in Riaz's previous lawsuit against a medical facility. Those declarations involved Riaz's "mental competency to stand trial." He stated *those* declarations "helped establish that [her] allegations against [him] were untrue" in *that* case.

Indeed, Riaz quotes Cantrell's as admission as follows: " 'Declaration … filed regarding … Riaz mental Competency to participate in trial. These Declaration helped establish that … Riaz allegations against me were Untrue.' " We believe it is clear an admission, if any, did not involve transmitting information to the Dental Board.

[11] The stricken medical malpractice and discrimination claims related only to furnishing information to the Dental Board, not to treatment during Riaz's office visit.

## B. Analysis

"The anti-SLAPP statute is 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." ' " (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008-1009 (*Bonni*).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni, supra,* 11 Cal.5th at p. 1009.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062.) "[I]n ruling on an anti-SLAPP motion, courts … consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.)

"To satisfy the probability of prevailing standard, '[t]he plaintiff need only state and substantiate a legally sufficient claim. [Citation.] The plaintiff's evidence is accepted as true; the defendant's evidence is evaluated to determine if it defeats the plaintiff's showing as a matter of law.' " (*Murray v. Tran* (2020) 55 Cal.App.5th 10, 36 (*Murray*).) The plaintiff "need only show 'minimal merit' to satisfy the burden," but "cannot rely on the allegations of the complaint[;] [he or she] must produce evidence that would be admissible at trial[.]" (*Ibid.*; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89.)

"If" there is no merit, "the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

Here, there is no doubt Cantrell's submission of documents to the Dental Board constitutes protected activity under Code of Civil Procedure section 425.16, subdivision (e)(4).[12] "[S]tatements concern[ing]" a dentist's "qualifications and competence to perform [] dental services[] are matters about which the public, including current and future dental patients, have a vital interest." (*Murray, supra,* 55 Cal.App.5th at p. 30.)

Turning to the probability of prevailing, we note Riaz failed to adduce any evidence—including exhibits, declarations, judicial notice, and testimony—to substantiate her allegation Cantrell reported her to the Dental Board for retribution. In other words, she alleged in her complaint Cantrell reported her to retaliate against her and out of motivation to defend himself to the Medical Board and in small claims court. (See ante, fn. 9.) Indeed, the complaint is replete with such allegations.

She failed, however, to adduce admissible evidence on the point. We are mindful the standard of proof at the second step is a low hurdle. "[A]t the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial." (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 949.)

---

[12] Code of Civil Procedure section 425.16, subdivision (e)(4) defines protected speech to include "any … conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Put simply, there are no "affidavits, declarations, [or] their equivalents" in this case relative to Riaz proving Cantrell reported her *not* out of concern for the public. The anti-SLAPP motion was properly granted because Riaz failed to demonstrate minimal merit with any potentially admissible evidence. (Cf. *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 ["a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' "]; *Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 50 ["It is the responsibility of … the party opposing the anti-SLAPP motion[] to organize the evidence and develop its arguments at the second step of the analysis."].)

## II. Demurrers

Both Cantrell and the State filed demurrers to Riaz's complaint. The trial court sustained the demurrers, allowing Riaz only an opportunity to amend an unfair competition claim against Cantrell, and to defeat governmental immunity against the State. After Riaz amended the complaint, the trial court sustained demurrers without leave to amend. We find no error in its rulings.

### A. Additional Background

Riaz's complaint alleged an elaborate conspiracy designed to harm her and prevent her from pursuing her "whistleblower" case. The only harm she identified was "privacy breach" and the sole injury she described was losing her license to practice dentistry. In her words, she claimed the Dental Board should have dismissed its mental-health-examination order, the Dental Board was acting in violation of antitrust law, Cantrell "reache[d] the dental board to retaliate[ and] harm the career of his patient," the State was negligent "for the pretextual purpose to discredit court witnesses and involved in the cover-up of crimes," and the Dental Board "utilized confidential patient

9.

information … in an illegal and unethical manner for the purpose of whistleblower retaliation[.]"[13]

The complaint alleged causes for medical malpractice, negligence, professional negligence, fiduciary breach, unreasonable restraint of trade, antitrust violations, unfair competition, equal protection violations, due process violations, defamation, intentionally inflicting emotional distress, discrimination, retaliation, whistleblower violations, breach of contract, and personal injury. In Riaz's words, each defendant "conspired, actively participated, or agreed together and utilized Dental Board and [Department of Justice] authority to put unreasonable restraint on [Riaz's] trade by obtaining unlaw full order 'compelling to evaluated for a Mental and Physical examination[.]' "

Cantrell argued Riaz failed to properly state a claim because it was "uncertain" and "unintelligible," and the office-visit issues were already resolved in small claims court. The State similarly averred Riaz "fail[ed] to state sufficient facts to constitute a valid cause of action," and also asserted various governmental immunities applied to the case.

The trial court sustained the demurrers. It ruled the Dental Board's order to undergo an examination could not, pursuant to *Fettgather v. Board of Psychology* (2017) 17 Cal.App.5th 1340 (*Fettgather*), form the basis for a tort. Similarly, Riaz's failure to comply with the order "preclude[d] her from challenging it[.]" As to the State specifically, the court found it was immune from suit under Government Code section 821.6.

The demurrer was also sustained on the causes relating to Riaz's office visit with Cantrell because those facts were previously tried in the small claims case, in which Cantrell prevailed. The causes of action relating to Cantrell furnishing information to the

---

**13** Riaz's complaint is 122 pages long and we offer a succinct, noncomprehensive but material summary.

Dental Board were stricken pursuant to the anti-SLAPP motion. Finally, the court noted the HIPAA did not create a private right to sue. It provided Riaz leave to amend to defeat governmental immunity, and allege a concrete "unfair business practice" that caused damage.

Riaz did in fact amend the complaint. She reiterated Cantrell and the State "collaborat[ed]" together to "discriminat[e] retaliat[e], harass[]," and "intimidat[e]" her resulting in "a breach of privacy, … lost earnings[ and] goodwill, … and harm [to her] personal and professional reputation in … society and the marketplace." The injuries were "fairly traceable" to a "retaliatory pre-textual investigation, and [an] unlawful [section] 820 [order] by [the] Dental Board based on conspiratorial activity with … Cantrell and breach [of] patient confidentiality[.]" She also assigned blame to the Medical Board for failing to "take reasonable action upon" her submitted complaint regarding Cantrell.

The amended complaint clarified Riaz "first … discovered" on July 5, 2022, the Dental Board and Cantrell were "involved in a privacy breach of patient and conspiring with board actors and government official in order to retaliate patient/court witness, obstruct court proceeding, witness tampering, violate civil rights of woman of color and to intimidate court witness." It also included the following numbered, discrete, loosely-stated causes of action: 1) medical malpractice, negligence, and willful negligence; 2) vicarious liability against the Medical Board; 3) professional negligence; 4) fiduciary breach; 5) unreasonable restraint of trade; 6) anticompetition; 7) antitrust; 8) unfair competition; 9) equal protection; 10) due process; 11) conspiracy; 12) defamation; 13) intentionally inflicting emotional distress; 14) punitive damages; 15) labor retaliation; 16) contract breach; 17) personal injury; 18) fraud; 19) privacy breach; 20) First

11.

Amendment; and 21) Bane Act (Civ. Code, § 52.1).[14]  All told, the amended complaint largely restated the original complaint but discretely numbered each cause of action.[15]

Cantrell and the State again demurred to the complaint.  Cantrell argued Riaz again "fail[ed] to state a cause of action" and otherwise failed to comply with the court's order providing leave only to amend the unfair competition claim.  He reasserted the amended complaint was "uncertain" and "unintelligible[.]"

The State demurred and asserted several immunities including licensing board immunity and the Government Claims Act.  It also noted causes "nine, ten, and twenty exceed[ed] the scope of the court's order granting leave to amend."[16]  The State also requested the trial court to take notice of Riaz's government-complaint form, submitted on April 28, 2023, citing an incident date of February 17, 2023.[17]

The trial court separately ruled on each demurrer.  As to Cantrell, the court noted it only provided leave to amend the unfair competition claim and focused on that "claim only."  It concluded, as a matter of law, Cantrell's submission to the Dental Board and resultant section 820 order "did not implicate [Riaz's] license, ability to practice or cause [her] any harm other than having to respond," which was a "condition of her license."  It also noted Riaz "could have reasonably avoided the injur[y] suffered, at least by responding to the [o]rder," which she readily admitted she did not.  On these points, it sustained the demurrer without leave to amend.

---

[14] The numbering is based on both the amended complaint, and a separate motion Riaz filed, clarifying the First Amendment and Bane Act causes of action were distinct.

[15] For example, the original complaint was 122 pages long and included 906 numbered paragraphs.  The amended complaint was 207 pages long yet included 909 numbered paragraphs.

[16] The State elsewhere made clear these were the causes of action for equal protection, due process, and First Amendment.

[17] The incident date corresponds to the Dental Board's publication regarding Riaz on its website.

As to the State, the trial court granted the request to judicially notice Riaz's "government tort claim, received … on April 28, 2023." The court noted Riaz's complaint alleged everything arose " 'from privacy breach … discovered about July 5, 2022[.]' " Her claim, received on April 28, 2023, was untimely because it was presented more than six months later (see Gov. Code, § 911.2.). The court also found the State was immune under Government Code section 821.6, pertaining to " 'injury caused by … instituting or prosecuting any judicial or administrative proceeding …, even if [instituted] maliciously and without probable cause.' " Finally, it ruled immunities in Government Code sections 818.4 and 821.2, dealing specifically with licensing decisions, "also appear[ed] to apply[.]"

**B. Analysis**

"Because this appeal is from a judgment entered after the sustaining of a demurrer, ' "[w]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law." ' [Citation.] We also consider matters that are subject to judicial notice." (*Rosenberg-Wohl v. State Farm Fire & Casualty Co.* (2024) 16 Cal.5th 520, 523.)

"[W]e look beyond [each] claim's label" in the complaint, "which are not dispositive when reviewing a trial court's sustaining of a general demurrer. [Citation.] Instead we focus on the complaint's 'actual gravamen' [citation], on its 'facts alleged.' " (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1595 (italics omitted).)

Our review is de novo. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.) We discern the following four actionable events and frame our analysis accordingly: 1) Riaz visited Cantrell but was refused treatment; 2) Cantrell reported Riaz to the Dental Board; 3) the board instituted proceedings against Riaz's license; and 4) the board published Riaz's discipline on its website. With these events in mind, we separately examine Cantrell's and the State's demurrers.

13.

### i. Cantrell's Demurrers

We address the events relative to Cantrell in chronological order. First, Riaz's office visit resulted in alleged discrimination and harassment. She, however, tried the events in small claims court. A judgment was entered in Cantrell's favor. That judgment was not appealable nor subject to renewal.

"Generally, a plaintiff with a claim under $5,000 may choose to bring his action in small claims court rather than superior court. [Citation.] A plaintiff who elects to proceed in small claims court may not appeal a judgment entered against him." (*Pitzen v. Superior Court* (2004) 120 Cal.App.4th 1374, 1378.) "The policy precluding review of small claims judgments against plaintiffs is so strong that a small claims plaintiff cannot obtain appellate review even where he can demonstrate the small claims court clearly erred as a matter of law." (*Id.* at p. 1380.)

"A small claims plaintiff is collaterally estopped from relitigating the same issue in superior court where the record is sufficiently clear to determine that the issue was litigated and decided against plaintiff in the small claims action. [Citation.] In addition, it is well-settled that the claim preclusion aspect of the doctrine of res judicata applies to small claims judgments. [Citation.] Here, the record is sufficiently clear to permit us to determine that the issue litigated and decided against [Riaz] in the small claims action is substantially identical to the issue in litigation" on appeal. (*Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 791.) The trial court correctly sustained the demurrer relative to the office-visit claims.

Second, Cantrell submitted documents to the Dental Board. The Dental Board followed up by instituting action against Riaz's license to practice dentistry. Although she alleged Cantrell did so with malice, an allegation we must accept as true on demurrer, Cantrell prevailed on claims relating to this event due to the anti-SLAPP statute. (See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278 [anti-SLAPP statute

" 'establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.' ".)

As noted above, the trial court properly found Riaz failed to establish a probability of prevailing primarily because she failed to adduce any evidence rebutting Cantrell's protected-activity claim. (Ante, **I., B.**) Accordingly, Riaz cannot allege legally sufficient claims against Cantrell stemming from his submission of documents to the Dental Board.

To the extent these twin rulings did not cover the entire complaint, Riaz failed to properly state a claim. For example, she alleged unfair competition, but never identified an actual unfair practice. Unfairness involves "an injury that consumers themselves could not reasonably have avoided." (*Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403.)

Here, Riaz simply could have complied with the Dental Board's order. She instead chose to challenge the order but she was not successful because compliance with the order was required. "[T]he governmental interest involved in requiring compliance with a section 820 order is compelling." (*Fettgather, supra,* 17 Cal.App.5th at p. 1349.) "The actual ability to investigate whether the medical professional is indeed mentally ill is paramount to that call. That a revocation order may be issued suspending a license for noncompliance with a section 820 order in pending revocation proceedings further underscores the importance of this interest." (*Fettgather,* at p. 1349.) "[T]he appropriate balance between the private and public interest is struck through requiring [Riaz] to submit to the section 820 mental examination and challenge the results of that examination only after a formal accusation alleging mental illness is brought." (*Fettgather,* at p. 1348.)

Importantly, Riaz's "right to practice was not implicated by the order for a mental examination. [Citations.] The order did not immediately threaten [her] license, but was merely an authorized administrative inquiry, falling squarely within the police power to

15.

protect the public." (*Fettgather, supra,* 17 Cal.App.5th at p. 1347.) All told, the trial court appropriately held Riaz entirely failed to statute a sufficient cause against Cantrell.

### ii. The State's Demurrers

Likewise, we address the events relative to the State in chronological order. First, the Dental Board issued a section 820 order to Riaz. Second, the board published its completed discipline against Riaz on its website. There is no allegation or reason to believe the first order was published. In other words, it was a private, confidential process, until discipline was final.

Governmental immunity is an affirmative defense properly raised by demurrer. (See *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 807.) "[B]ecause public entity liability is statutory in nature, facts material to the existence of such liability must be pleaded with particularity." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872 (*Hart Union*).)

Government Code section 821.6 "immunizes public employees from liability for 'instituting or prosecuting any judicial or administrative proceeding' within the scope of their employment, 'even if' the employees act 'maliciously and without probable cause.' [Citation.] This provision immunizes public employees from claims of injury caused by wrongful prosecution." (*Leon v. County of Riverside* (2023) 14 Cal.5th 910, 915.)

Clearly, even if the State conspired to maliciously institute administrative proceedings against Riaz's license to practice dentistry, it is immune under Government Code section 821.6. Riaz did not sufficiently or specifically allege the State's employees acted beyond the scope of their employment. Nor did she otherwise allege the immunity did not apply. (See *Hart Union, supra,* 53 Cal.4th at p. 872.)

Either way, those allegations would comprise legal conclusions we need not accept on demurrer. (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 346 ["On demurrer review, we accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law."].) The trial court properly

16.

found the State immune on this basis. (Cf. Government Code, §§ 818.4 & 821.2 [describing governmental immunities in licensing decisions].)

Similarly, "[u]nder [Government Code] section 911.2, '[a] claim relating to a cause of action for death or for injury to person or to personal property … shall be presented … not later than six months after the accrual of the cause of action.' [Government Code] [s]ection 945.4 then provides that '*no suit for money or damages may be brought against a public entity* on a cause of action for which a claim is required to be presented … until a written claim therefor has been presented to the public entity and has been acted upon ….' … Thus, under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239.)

Here, Riaz alleged her claims arose in July 2022. Her written government claim was submitted in April 2023, more than six months later. Accordingly, the claims were barred, at least insofar as they stemmed from the section 820 order.

To the extent Riaz is suing the State for publishing information on the Dental Board's website in February 2023, the claims presentation requirement is not a bar. The immunity conferred to the State in Government Code section 821.6, for instituting proceedings against Riaz's license, remains dispositive. Riaz has not pleaded, with any specificity, the immunity does not apply to this case. (*Hart Union, supra,* 53 Cal.4th at p. 872.) We conclude the State's demurrer was properly sustained on the basis it is immune under Government Code section 821.6 from suit for publicizing information regarding Riaz's license on the Dental Board's website. (Cf. *Richards v. Department of Alcoholic Beverage Control* (2006) 139 Cal.App.4th 304, 318 ["a public entity is immune from liability for an injury caused by the suspension, revocation, issuance, or denial of a license if the public entity is authorized by law to determine whether the license should be suspended, revoked, issued, or denied."].)

Notwithstanding immunity, we address Riaz's allegations involving due process and antitrust. In the amended complaint, Riaz alleged her rights to due process were impinged because there was "[n]o opportunity provided to be heard" before the Dental Board "implemented a decision of [m]ental examination against [her] after a hidden proceeding," nor "an opportunity to be heard before final order entered." Her claim is belied by the record.

In the complaint, Riaz admit she challenged the section 820 order before the Dental Board. Her challenges were simply rejected. She stated, for example, the board informed her she could not " 'contest the … order with motions or a request for a hearing.' " At the actual hearing to determine discipline for noncompliance, Riaz declined to testify. Her "repeated refusal to engage in the statutory process undermines [her] claim that [s]he was deprived of due process of law." (*Fettgather, supra,* 17 Cal.App.5th at p. 1348.)

Riaz also complained the defendants "conspire[d] or agreed to bring [a] bad faith investigation … for pre textual retaliatory reasons based on breach of patient confidentiality under [the] Sherman Act." (See 15 U.S.C. section 1 et seq.) She asserted "[m]embers of regulatory bodies in this case who conspire against competition unfairly and tend to destroy competition are not immune from antitrust allegations."

"Federal antitrust law is a central safeguard for the Nation's free market structures." (*North Carolina State Bd. of Dental Examiners v. F.T.C.* (2015) 574 U.S. 494, 502.) "The antitrust laws declare a considered and decisive prohibition … of cartels, price fixing, and other combinations or practices that undermine the free market." (*Ibid.*) "[S]tate-action immunity exists to avoid conflicts between state sovereignty and the Nation's commitment to a policy of robust competition[.]" (*Id.* at p. 504.)

Again, Riaz's allegations alleging the Dental Board's antitrust violations are merely legal conclusions we need not, and do not, accept. Ultimately, she failed to properly allege a claim the State's actions violated antitrust law.

## CONCLUSION AND SUMMARY

Finally, we address a few noteworthy points Riaz raised throughout the trial court and in her appellate brief. Riaz repeatedly asserted her privacy rights under the HIPAA were violated. "HIPAA does not," however, "provide a private right of action[.]" (*McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1166, fn. 5.) Riaz also repeatedly claimed the trial judge was biased. She petitioned to disqualify the judge but failed. Her writ challenge to that denial was rejected. (*Riaz v. Superior Court of Tulare County* (F086624, Aug. 31, 2023, summarily denied, review denied S281800, Sep. 28, 2023.) She now raises the issue again on appeal but the issue is not appealable. (Code of Civ. Proc, § 170.3, subd. (d) ["The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding."]; *People v. Nieves* (2021) 11 Cal.5th 404, 498, fn. 13 ["statutory right to impartiality is raised through a motion to disqualify an assertedly biased judge ..., the resolution of which is reviewable only be writ of mandate"].)

Similarly, Riaz sought to disqualify Cantrell's attorneys on the basis they were "material witness[es]" and violated "the code of professional responsibility" because they prepared legal documents for his small claims case without revealing that fact. The trial court denied the motion and we discern no abuse of discretion. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159 [" 'a trial court's decision on a disqualification motion is reviewed for abuse of discretion.' "].)

Notably, attorneys are forbidden from "tak[ing] part in the conduct or defense of a small claims action." (Code Civ. Proc., § 116.530, subd. (a).) It does not, on the other hand, forbid "[p]roviding advice to a party to a small claims action[.]" (*Id.*, subd. (c)(1).)

Riaz also complained the Government Claims Act did not apply because she was not seeking money damages. It is true the Government Claims Act *presentation requirement* would not apply to such cases. (*City of Stockton v. Superior Court* (2007)

19.

42 Cal.4th 730, 737-738.) The statutory immunities involving instituting proceedings and licensing decisions—Government Code sections 821.6, 818.4, 821.2—would remain. In any event, Riaz's complaint unabashedly sought money damages and she cannot now contend otherwise—inconsistencies are held against the pleader. (*Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1235-1236.)

In sum, Riaz failed to allege colorable claims against either Cantrell or the State. The potential claims against Cantrell were either tried and resolved against her in small claims court, or dismissed pursuant to the anti-SLAPP statute. Any potential claim not covered is "uncertain," "ambiguous," or "unintelligible." (Code Civ Proc., § 430.10, subd. (f).)

The potential claims against the State were either barred for failure to timely present them under the Government Claims Act, or the State was immune under Government Code sections 821.6, 818.4, and 821.2. Riaz failed to properly allege the immunities did not apply. In total, the demurrers to the complaint were rightly sustained without further leave to amend.

## DISPOSITION[18]

The judgments are affirmed. Each party to bear its costs on appeal.


SNAUFFER, J.

WE CONCUR:


LEVY, Acting P. J.


FAIN, J.*

---

**18** The record is unclear whether any judgment was entered in this case. "[A]n order sustaining a demurrer without leave to amend is ordinarily not appealable since the order is not a final judgment." (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 485, fn. 9.)

No party raises the issue. "[I]n the interest of judicial economy, we shall deem the order to incorporate a judgment of dismissal." (*Smith v. Hopland Band of Pomo Indians* (2002) 95 Cal.App.4th 1, 3, fn. 1.)

* Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.